UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| In re: | : | Chapter 13 |
| --- | --- | --- |
|  | : |  |
| Amy Marie Strauss, | : | Case No. 5:21-00995-MJC |
|  | : |  |
| Debtor. | : |  |

# O P I N I O N

## I. INTRODUCTION

Before the Court is the Application of Attorney for Chapter 13 Debtor for Compensation and Reimbursement of Expenses ("Application") filed on August 12, 2021, Dkt. # 34, by Mr. Carlo Sabatini, Esquire, as Counsel for Debtor ("Applicant" or "Counsel"). The Application seeks allowance of compensation in the amount of $8,409.50 and reimbursement of expenses of $347.92 for the period March 26, 2019 to August 6, 2021. At issue, is (i) the appropriateness of the amount of fees charged in this "routine" Chapter 13 case[1], and (ii) the somewhat unusual situation where Counsel seeks approval of attorney's fees which were rendered two years prior to the petition date.

For the reasons set forth below, the Application will be granted in part and denied in part.

## II. JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Reference of the U.S. District Court for the Middle District of Pennsylvania

---

[1] After the filing of the Application, this Court thoroughly reviewed a different fee application filed by Mr. Sabatini in In re Badyrka, 2022 WL 4656034 (Bankr. M.D. Pa. 2022). The findings and analysis set forth at length in Badyrka are incorporated herein. In Badyrka, which was also a "routine" Chapter 13 case, Mr. Sabatini sought interim compensation of $10,452.50. The Court found that his billing was excessive and reduced the allowed compensation by $4,996.00, an approximate 48% reduction.

1

dated March 11, 2016. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), and (O). Venue is proper pursuant to 28 U.S.C. § 1409(a).

### III. FACTS

#### A. The Bankruptcy Case

Debtor Amy Strauss ("Debtor") filed this voluntary Chapter 13 case on April 30, 2021. Debtor filed her schedules, statements, Chapter 13 plan, and other required documents on the same day. See Dkt. # 1, 2, 4-6.

Debtor's Schedules indicated that she owns no real estate and has one vehicle that is fully encumbered. See Schedule D, Dkt. # 1 at 20. She scheduled twelve unsecured creditors with total claims of $103,462.72. See Sch E/F, Dkt. # 1 at 22-29. Debtor reported that she was employed as a human resources manager and owns and operates an event planning business. See Sch I/J, Dkt. # 1 at 32-37. Debtor's Schedules were subsequently amended several times during the course of this case. See Dkt. # 16, 21, 35.

Debtor disclosed on her Statement of Financial Affairs ("SOFA") that she was involved in four pre-petition lawsuits. Two debt collection actions were instituted in the Pennsylvania Court of Common Pleas, Lackawanna County against Debtor. Conversely, Debtor filed two consumer protection actions in the United States District Court for the Middle District of Pennsylvania. Post-petition, Debtor disclosed three additional potential causes of action under the Fair Debt Collection Practices Act. Debtor filed a motion seeking abandonment of these potential claims, which the Court granted on February 4, 2022. See Dkt. # 37.

Debtor's Chapter 13 Plan ("Plan") proposed to pay to the Chapter 13 Trustee ("Trustee") $705.00 per month for 60 months for a base plan of $42,300.00. See Dkt. # 6. The Plan further

2

proposed to cramdown the value of her vehicle. Debtor's secured creditor, PSECU, objected to the Plan but later withdrew its objection. See Dkt. # 20, 22. The Court confirmed the Plan on August 5, 2021. Dkt. # 32.

Other than the causes of action separately brought by Debtor against her creditors outside this bankruptcy case, Debtor's bankruptcy case is similar to most other "routine" Chapter 13 cases filed in this District. Debtor's initial Plan was confirmed and there have been no contested matters or adversary proceedings in this bankruptcy case.

**B. The Fee Application**

According to the time entries attached as an exhibit to the Application, Debtor first met with Counsel on March 26, 2019. Over the next several months, Counsel communicated with Debtor regarding questions she had concerning certain debts. It does not appear that Counsel prepared Debtor's bankruptcy schedules and statements during this time. On March 9, 2020, Debtor called Counsel to inquire as to the bankruptcy timeline.

In late February 2021, Counsel responded to Debtor regarding a lawsuit that was filed against her. After that, significant efforts were undertaken in March and April 2021 to collect information, consult with Debtor, and prepare the petition, schedules, and statements. As stated above, the petition was filed on April 30, 2021.

Between March 26, 2019 and April 29, 2021, Counsel billed $4,081.50.[2] The bulk of the pre-petition fees, i.e., $3,083.00, was incurred in March and April 2021. Post-petition, Counsel

---

[2] Counsel's hourly rate is $415.00. As this Court observed in Badyrka, this rate is one of the highest rates for consumer bankruptcy practitioners in this District, including practitioners with much more experience. Badyrka, 2022 WL 4656034 at *2-3. At such a high rate, and with over 20 years of practicing, it would seem logical that Mr. Sabatini would be able to bill clients more efficiently and expend fewer hours and/or utilize support staff better to lower the costs to his clients, especially in routine Chapter 13 cases. As in Badyrka, the Court questions whether the high hourly rate is reasonable in a routine Chapter 13 case. Id. at *3. The number of hours billed in this case (similar to Badyrka) simply do not justify the high hourly

3

billed $4,328.00. This sum represents compensation for the period April 30, 2021 to August 6, 2021.

The Application includes Mr. Sabatini's hours, as well as, one associate and two paralegals. Mr. Sabatini billed most of the attorney hours at 19.6 hours, which he discounted by 3.9 hours. 16.4 total paralegal hours were billed but then discounted by 4.2 hours. The total hours expended through confirmation is a staggering 36.40 hours, which was reduced by 8.3 hours. The total bill was $10,725.00 and after reductions, $8,409.50.

## IV. LEGAL STANDARD

Section 330(a) governs the compensation of attorneys. It provides, in part:

> (a)(1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to ... a professional person employed under section 327 or 1103 —
>
> > (A) reasonable compensation for actual, necessary services rendered by the ... attorney and by any paraprofessional person employed by any such person; and
> >
> > (B) reimbursement for actual, necessary expenses.
>
> (2) The court may, on its own motion or on the motion of the United States Trustee, the United States Trustee for the District or Region, the trustee for the estate, or any other party in interest, award compensation that is less than the amount of compensation that is requested.

The burden of proof rests on the applicant to establish that the fees were earned and that they are reasonable. Zolfo, Cooper & Co. v. Sunbeam-Oster Co., 50 F.3d 253, 261 (3d Cir. 1995)

---

rates. Given that this Application was filed prior to Badyrka, the Court reserves its right to further review the appropriateness of this high hourly rate.

4

(citing In re Metro Transp. Co., 107 B.R. 50, 53 (E.D. Pa. 1989)); In re Pochron, 2022 WL 1085459, at *2 (Bankr. S.D. Ohio 2022); In re Murray, 2007 WL 2317523, at *2 (Bankr. E.D. Pa. 2007). Even in the absence of objection, "the bankruptcy court has a *duty* to review fee applications." In re Busy Beaver Bldg. Centers, Inc., 19 F.3d 833, 841 (3d Cir. 1994) (emphasis in original).

Pursuant to §330(a)(3), the Court may award "reasonable compensation for actual, necessary services rendered" by debtor's counsel provided that the nature, extent, value, and time spent on the services are necessary, reasonable and required for administration of the estate. Under §330(a)(3), the Court must consider:

> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. §330(a)(3)(A)-(F).

In determining a reasonable fee, the calculation most frequently used is the lodestar method, which, simply stated, multiples the number of expended hours by the hourly rate. In re

Smith, 331 B.R. 622, 628 (Bankr. M.D. Pa. 2005) (citing Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)). Under the lodestar, courts frequently assess whether the services were provided in a cost-efficient manner. See In re Szymczak, 246 B.R. 774, 782 (Bankr. D. N.J. 2000) ("Simply because an attorney spent time, does not mean it is compensable or that counsel used the most economical means of rendering the services.").

Courts also look to ensure that an applicant has delegated tasks that do not require a senior attorney's expertise to less expensive attorneys or paralegals, id. at 783, and that administrative tasks are billed at appropriate rates, see Busy Beaver, 19 F.3d at 855 ("[w]hen an experienced attorney does clerk's work, he or she should be paid clerk's wages"). This type of review is necessary so that the costs of administration do not consume assets that otherwise would be available to creditors. See Badyrka, 2022 WL 4656034, at *10 (citing In re Fontaine, 2015 WL 5162557, at *3 (Bankr. M.D. Pa. 2015)).

The bottom line is that attorneys are expected to exercise reasonable billing judgment. See Szymczak, 246 B.R. at 783. This involves "writing off unproductive research time, duplicative services, redundant costs precipitated by overstaffing, or other expenses with regard to which the professional generally assumes the cost as overhead in corresponding non-bankruptcy matters." Busy Beaver, 19 F.3d at 856.

Another statutory provision which is particularly relevant to this matter is Section 330(a)(4)(B), which governs the situation where an attorney provides services that benefits the debtor, rather than the bankruptcy estate. It provides:

> In a chapter 12 or chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the

> benefit and necessity of such services to the debtor and the other factors set forth in this section.

Thus, in order for attorney services to be compensated from the bankruptcy estate, those services must be: "1) be provided to an individual debtor; 2) be provided 'in connection with' a Chapter 12 or Chapter 13 case; 3) benefit the debtor; 4) be necessary to the debtor; and 5) otherwise be appropriate under the terms of § 330." Pochron, 2022 WL 1085459, at *4 (citing In re Hunt, 588 B.R. 496, 499 (Bankr. W.D. Mich. 2018)).

Generally, courts have construed the phrase "in connection with the bankruptcy case" broadly. See Pochron, 2022 WL 1085459, at *4 (collecting cases). Most courts do not read into Section 330(a)(4)(B) a temporal restriction and therefore, may allow compensation for services rendered prepetition or post-dismissal. Thus, Section 330(a)(4)(B) "may include services related to the precipitating cause of the bankruptcy, or services which are inextricably intertwined with the bankruptcy." In re Keller Fin. Servs. of Fla., Inc., 248 B.R. 859, 879 (Bankr. M.D. Fla. 2000). However, the phrase "in connection with the bankruptcy case" is not so broad as to cover "every service rendered to a person who is a debtor." In re Campbell, 259 B.R. 615, 626 (Bankr. N.D. Ohio 2001).

The court in In re Scribner, 2002 Bankr. LEXIS 1980 (Bankr. N.D. Tex. 2002), tackled the situation where debtor's counsel was seeking administrative expense priority for services rendered seven months prior to the filing of the bankruptcy case. The Scribner Court chose to draw the line at allowing services provided after the debtor "has chosen bankruptcy as the means through which to resolve his financial difficulties and counsel thus begins to prepare for an actual filing under Chapter 13." Id. at *12.

Another court, Pochron, supra, confronted a situation similar to the case sub judice, where the gap between when services were first rendered and the filing of the petition was nineteen (19)

7

months. There, the Court acknowledged that such a lengthy gap created difficulties in assessing the appropriateness of awarding fees under §330(a)(4)(B). The Court made several relevant observations:

> First, the longer the time between the initial consultation and the filing of the bankruptcy petition, the more difficult it is to assess whether those services were provided in connection with the case. With the passage of significant time, the connection to the case naturally becomes more remote. Second, to the extent not all the prepetition fees are approved by the court, unless counsel waives those fees, questions and issues arise from that consequence. Third, the longer the lead-up time becomes between the initial consultation and the filing of the case, the more likely it is that duplication and inefficiencies in the services will be present. Delay almost always results in increased fees.

Pochron, 2022 WL 1085459, at *6.

With these principles in mind, the Court turns to the Application.

## V. DISCUSSION

### A. Pre-petition Services Rendered on Behalf of Debtor in Connection with the Bankruptcy Case

As noted above, this Application presents a somewhat unusual situation given the length of time between the initial consultation and the filing of the bankruptcy petition.

A review of the time entries demonstrates that Debtor met with her Counsel for her initial consultation on March 26, 2019. It appears that some preliminary information was exchanged over the next few days. Debtor and her Counsel then had sporadic contact regarding various debts and several collection calls from Debtor's creditors for almost a year. Debtor contacted Counsel in March 2020 inquiring as to the bankruptcy timeline. See 3/9/2020 time entry. Over the next ten (10) months, there was minimal contact with her Counsel regarding Debtor's IRS tax debt.

8

The impetus for Debtor's bankruptcy case appears to have been the filing of two debt collection lawsuits filed against her in early 2021.[3] On February 10, 2021, Navy Federal Credit Union sued Debtor in the Pennsylvania Court of Common Pleas, Lackawanna County with respect to two credit cards and a line of credit. On March 30, 2021, LVNV Funding, LLC sued Debtor on a credit card debt.[4]

The associated time entries in the Application show that beginning in February 2021 there is a concerted effort to gather information and prepare the bankruptcy schedules. The petition, schedules, and Chapter 13 plan were finalized and eventually filed on April 30, 2021, just over two years after Debtor's initial consultation with Counsel.

It appears that during the approximately two years between the initial meeting and the filing of the bankruptcy case, Debtor (and Counsel) were more focused on pursuing claims <u>against</u> creditors. Debtor commenced actions against JPMorgan Chase on June 29, 2020 and Midland Credit Management on January 25, 2021 in the Lackawanna County Court of Common Pleas. Both actions were removed to the United States Middle District Court. <u>See</u> Dkt. # 1.[5]

While Debtor may have consulted with Counsel anticipating a bankruptcy filing, that filing did not materialize until much later. Certain advantages and disadvantages may arise from such a delay, but what is evident is that not all of the services that Counsel provided in that time frame are compensable with administrative expense priority under §330(a)(4)(B).

---

[3] These lawsuits against Debtor presumably could have been avoided had Debtor filed bankruptcy when she first consulted with Mr. Sabatini in 2019.

[4] A bankruptcy court may take judicial notice of the docket of other courts in related matters. <u>See e.g.</u>, <u>In re Davis</u>, 597 B.R. 770, 773 (Bankr. M.D. Pa. 2019).

[5] Although the Court is assuming Debtor initially consulted Mr. Sabatini for bankruptcy advice, in <u>Badyrka</u>, he testified that he used his bankruptcy cases as "loss leaders" to "keep the lights on." <u>Badyrka</u>, 2022 WL 4656034, at *11. Both of the listed consumer protection cases appear to have been settled but there was no disclosure of the settlement amounts or amounts paid in legal fees in the Midland case and the JPMorgan case was settled for $10,000 with the Debtor receiving $5,302 and Mr. Sabatini receiving $4,698.

The Court finds that services provided before September 2020 were not rendered in connection with the bankruptcy case. Services provided that far in advance are rendered too attenuated by the passage of time and cannot be said be to in connection with the bankruptcy case. Consequently, the Court will disallow $776.00.

### B. Reasonableness of Time Entries

As in Badyrka, in reviewing the docket, this case appears to be a routine Chapter 13 with no extraordinary issues that would warrant excessive time expended on getting this case to confirmation. Although this is not a Presumptively Reasonable Fee ("PRF") case and Mr. Sabatini and his client have agreed to utilize the lodestar method, this Court considers the PRF as a guide or "starting point" to what should be considered a "reasonable" fee in a routine Chapter 13 case in this District.[6] Badyrka, 2022 WL 4656034, at *4 (citing In re Schuman, 2013 WL 1195279, at *6 (Bankr. N.D. N.Y. 2013) (describing presumptive fee as "pre-calculated lodestar" and utilizing it as a starting point for review of lodestar fee applications). Again, as in Badyrka, Mr. Sabatini's fee request is almost double the PRF in this District and, is only an interim fee request, meaning that he will presumably bill additional fees. At the onset, it is difficult for this Court to find any basis for these excessive hours/fees given the experience of Counsel and the lack of any complexity to the case.

In preparing the petition and schedules, Mr. Sabatini spent 6.2 hours and his paralegals spent 3.4 hours, which equates to $2,573.00 and $510.00, respectively. The petition and schedules, which are completed on pre-printed forms in a bankruptcy software program, do not contain any difficult or unique issues. Counsel discounted certain time entries; however, the Court finds the

---

[6] The Court does have some concern as to whether a debtor, typically with no legal experience, is able to "knowingly" agree to the lodestar method versus seeking consultation with another attorney performing essentially the same tasks at the District's Presumptively Reasonable Fee ("PRF"). In this District the PRF is $4,500.00, see Local Rule 2016-2(c)(1)).

remaining amount of time expended is excessive for what is a relatively simple task of gathering information and preparing the schedules. The Court will generously allow 3 hours of attorney time in the amount of $1,245.00 and 2 hours of paralegal time, in the amount of $300.00 for a total of $1,545.00. See Szymczak, 246 B.R. at 780 (indicating that Chapter 13 cases are likely being filed *and* confirmed with fewer than five hours of attorney time).

As for the post-petition time entries, as in Badyrka, the Court finds that many of them are non-billable overhead or tasks that should have been billed at paralegal or secretarial rates. A small sampling of the time entries are below:

| | | | |
|---|---|---|---|
| .10 | Receive and review BNC Certificate of Notice for 341 notice for bypassed recipients | ASW | 15.00 |
| .10 | Receive and review BNC Certificate of notice for order confirming wage attachment. Employer was served | ASW | 15.00 |
| .10 | Email to client attaching petition, employee income records, motion for wage attachment, and certificate of debtor education filed on the docket | CS | 41.50 |
| .10 | Receive and review email from Reifsnyder with 341 meeting link | CS | 41.50 |
| .10 | Email to client with request for payment filed on the docket | CS | 41.50 |

Attorneys utilizing the lodestar method should recognize that "[n]ot every hour or part of an hour spent by an attorney is 'billable.'" Szymczak, 246 B.R. at 783 (quoting In re Stromberg, 161 B.R. 510, 517 (Bankr. D. Colo. 1993)).

The Court will not engage in a line-by-line analysis of the Application. See In re Maruko Inc., 160 B.R. 633, 642, 645 (Bankr. S.D. Cal. 1993). "Because its time is precious the reviewing court need only correct reasonably discernible abuses, not pin down to the nearest dollar the precise fee to which the professional is ideally entitled." Busy Beaver, 19 F.3d at 845. Accordingly, for the same reasons and based upon the same analysis set forth in Badyrka, the Court will reduce the excessive post-petition fees by 40%, see In re Kern, 2021 WL 3518806, at *5 (Bankr. D. N.J.

11

2021) ("If a court determines some of the time claimed by a party should be excluded, it may also use a percentage deduction as a practical means of trimming fat from a fee application." (quoting In re Nicholas, 496 B.R. 69, 76 (Bankr. E.D.N.Y. 2011))). Fees for the post-petition period will be allowed in the amount of $2,596.80.

## VI. CONCLUSION

For the reasons stated above, the Court concludes that the Applicant is entitled to a total fee allowance in the amount of $4,364.30 (i.e., $222.50[7] + $1,545.00 + $2,596.80) plus reimbursement of expenses of $347.92.[8]

An appropriate order will be entered.

By the Court,

Mark J. Conway, Bankruptcy Judge
Dated: March 31, 2023

---

[7] This amount represents the time entries for the period September 2020 through February 2021.

[8] To the extent the Applicant wishes to request reconsideration of the order reducing the compensation, the Applicant may do so and the Court will hold a hearing to allow the Applicant to present evidence or argument in support of its Application. See Busy Beaver, 19 F.3d at 845-47.